**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**ALLEN KENT BARBER,**

**Plaintiff,**

**v.**                                                          **Civ. No. 21-283 KK**

**KILOLO KIJAKAZI, Acting
Commissioner of Social Security,**

**Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

THIS MATTER is before the Court on Plaintiff Allen Kent Barber's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum, filed September 28, 2021. (Doc. 19.) The Acting Commissioner of the Social Security Administration ("Commissioner") filed a Response, and Mr. Barber filed a Reply. (Docs. 25, 26.) Having meticulously reviewed the entire record and relevant law, and being otherwise fully advised, the Court finds that Mr. Barber's Motion is well-taken and should be GRANTED.

### I. BACKGROUND AND PROCEDURAL HISTORY

The Commissioner has determined that Mr. Barber became disabled on January 16, 2016. (AR 12-29.)[2] Mr. Barber, however, asserts a disability onset date of August 7, 2014, and in this action he seeks reversal of the Commissioner's decision denying his claims for Title II disability insurance benefits ("DIB") from his alleged onset date through December 31, 2015, his date last

---

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Doc. 9.)

[2] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on July 30, 2021. (Doc. 15.)

insured, and for Title XVI Supplemental Security Income ("SSI") beginning from his alleged onset date to January 16, 2016. *See* 42 U.S.C. §§ 401–434 and 1381–1383f; (s*ee* Doc. 1; AR 12, 29.)

Mr. Barber, age 40, suffers from lower back pain due to degenerative disc disease in his lumbar spine. (AR  672.) In 2010, Mr. Barber suffered an accident while working as an auto mechanic, dislocating his left shoulder and requiring surgery. (AR 48-50, 668, 838.) Mr. Barber reports that because of this injury he has lost significant range of motion in his left shoulder, and he suffers from pain in his left shoulder and upper back. (AR 50, 668, 838.) For these issues, Mr. Barber sees a pain specialist and treats his pain with hydrocodone and medical marijuana. (AR 786.) Mr. Barber has also been diagnosed with major depressive disorder, anxiety disorder, pain disorder, insomnia, and post-traumatic stress disorder. (AR 1149, 669.) He received some special education in school but was not classified as learning disabled, and he dropped out of school in the ninth or tenth grade and did not complete a GED. (AR 58, 787, 937.) At around age 20, he was hospitalized because he was suicidal. (*Id.*)

On January 16, 2016, Mr. Barber was involved in a motor vehicle accident in which he suffered a concussion. (AR  604.) Mr. Barber testified that he had memory issues before the accident, but after he found that he could not "even remember one of [his] children's birthdays." (AR 55; *see also* AR 604 ("Girlfriend has reported ongoing amnesia for events around accident as well has poor memory for events after 2010.").) After the accident, Mr. Barber was diagnosed with paranoid disorder and psychotic disorder, and was medically found to have a decline in cognitive functioning. (AR 789, 936, 939.)

On May 10, 2016, Mr. Barber filed claims for SSI and DIB, alleging disability beginning on August 7, 2014.[3] (AR 422–37.) Mr. Barber's claims for SSI and DIB were denied initially and upon reconsideration. (AR 239–46, 251–58.) He then requested a hearing before an Administrative Law Judge ("ALJ"). (AR 259–60.) On August 22, 2018, a hearing was held before an ALJ, and on September 17, 2018, that ALJ issued an unfavorable ruling. (AR 73–103, 215–29.) Mr. Barber appealed the decision to the Appeals Council, and on April 22, 2019, the Appeals Council remanded his case for a rehearing. (AR 206–09.) On January 30, 2020, a hearing was held before a new ALJ,[4] and on March 6, 2020, the ALJ issued a partially favorable ruling, finding that Mr. Barber was disabled beginning January 16, 2016. (AR 12–29, 40–71.)

The ALJ applied the Commissioner's five-step evaluation process.[5] At step one, the ALJ determined that Mr. Barber had not engaged in substantial gainful activity since his alleged onset date. (AR 14.) At step two, the ALJ found that:

> Since the alleged onset date of disability, August 7, 2014, the claimant has had the following severe impairments: degenerative disc disease; left shoulder labral tear

---

[3] Mr. Barber initially alleged disability beginning February 12, 2016, but shortly after amended his alleged onset date to August 7, 2014. (AR 436–37.)

[4] Unless otherwise specified, all discussion herein refers to the second ALJ.

[5] The five-step sequential evaluation process requires the ALJ to determine whether:

(1)    the claimant engaged in substantial gainful activity during the alleged period of disability;
(2)    the claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement;
(3)    any such impairment meets or equals the severity of a listed impairment described in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
(4)    the claimant can return to his past relevant work; and, if not,
(5)    the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

status post arthroscopic Bankart repair; anxiety; depression; and somatic symptoms disorder. Beginning on the established onset date of disability, January 16, 2016, the claimant has had the following severe impairments: degenerative disc disease; left shoulder labral tear status post arthroscopic Bankart repair; anxiety; depression; psychotic disorder; cognitive disorder and somatic symptoms disorder.

(AR 15.) At step three, the ALJ determined that Mr. Barber's impairments do not meet or medically equal the severity of one of the Listings described in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (*Id.*)

At step four,[6] the ALJ found that

prior to January 16, 2016, the date the claimant became disabled, the claimant had the residual functional capacity [("RFC")] to perform light work . . . except the claimant could occasionally, balance, stoop, crouch, crawl and climb ramps and stairs. Moreover, the claimant could never climb ladders, ropes or scaffolds, or be exposed to unprotected heights, hazardous machinery or concentrated exposure to extreme cold. The claimant could occasionally reach overheard with his left non-dominant upper extremity. The claimant could occasionally push and pull at the light exertional level with the left nondominant upper extremity. Furthermore, the claimant could perform at a specific vocational preparation (SVP) of one or two with no fast-paced production work. Finally, the claimant could occasionally interact with co-workers, supervisors and the general public and tolerate occasional changes to the work setting.

(AR 19.) The ALJ further found that

beginning on January 16, 2016, the claimant has the [RFC] to perform sedentary work . . . except the claimant can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs. The claimant can never climb ladders, ropes or scaffolds, or be exposed to unprotected heights, hazardous machinery, or concentrated exposure to extreme cold. The claimant can occasionally reach overhead with the left non-dominant upper extremity. The claimant can occasionally push and pull at the sedentary exertional level with the left non-dominant upper extremity. The claimant can perform SVP 1 or 2 level work, with no fast paced production work. Further, the work should be performed in the same

---

[6] Step four involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must consider all of the relevant evidence and determine what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is the claimant's residual functional capacity. *Id.* Second, the ALJ must determine the physical and mental demands of the claimant's past work. *Winfrey*, 92 F.3d at 1023. Third, the ALJ must determine whether the claimant is capable of meeting those demands given his residual functional capacity. *Id.* A claimant who can perform his past relevant work is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

location every day. Finally, the claimant can have occasional interaction with co-
workers and supervisors, but rare interaction with the general public, defined as less
than 10% of the workday.

(AR 22.) The ALJ then determined that, beginning on August 7, 2014, Mr. Barber could not

perform his past relevant work as an auto mechanic. (AR 26.)

At step five, the ALJ relied on the Vocational Expert's testimony that prior to January 16,

2016, a hypothetical individual with Mr. Barber's age, education, work experience, and assigned

RFC, could perform jobs including collator operator, injection molding machine tender, and

marker. (AR 27–28.) The ALJ determined that there were jobs that existed in significant numbers

in the national economy that Mr. Barber could perform prior to January 16, 2016. (AR 28.) The

Vocational Expert further testified that beginning January 16, 2016, the hypothetical individual

could perform the jobs of addresser, document preparer, and stem mounter, of which there were

4,300, 29,000, and 2,700 jobs in the national economy respectively. (AR 28.) But the ALJ

"concluded that this exhaustive list does not show jobs that exist in significant numbers in the

national economy." (AR 29.)

The ALJ found that Mr. Barber "was not disabled prior to January 16, 2016, but became

disabled on that date and has continued to be disabled through the date of this decision." (AR 29.)

The ALJ also found that Mr. Barber "was not under a disability within the meaning of the Social

Security Act at any time through December 31, 2015, the date last insured." (*Id.*) Mr. Barber

appealed the ALJ's decision to the Appeals Council, and on February 2, 2021, the Appeals Council

denied his request for review, making the ALJ's decision the Commissioner's final decision from

which Mr. Barber now appeals. (AR 1–3.)

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. §§ 405(g); 1383(c)(3); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (citations and quotations omitted). It is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118 (citations and quotations omitted), or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citations, quotations, and alterations omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must

6

demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting his [or her] decision, the ALJ also must discuss the uncontroverted evidence he [or she] chooses not to rely upon, as well as significantly probative evidence he [or she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out his [or her] specific findings and his [or her] reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

## III. DISCUSSION

Mr. Barber challenges the ALJ's finding that he was not disabled between his alleged onset date of August 7, 2014 and January 16, 2016. He argues that when determining his RFC prior to January 16, 2016, the ALJ failed to properly consider the medical opinions of Mr. Barber's treating physician, Dr. Carletta Thompson. (Doc. 19 at 16–17.) For the reasons discussed below, the Court finds that this argument is well taken and remand is warranted.[7]

The ALJ assigned Mr. Barber two RFCs, the first for the timeframe between August 7, 2014 and January 16, 2016 (hereinafter "pre-January 16, 2016 RFC"), (AR 19), and the second for the timeframe from January 16, 2016 through the date of the 2020 decision (hereinafter "post-January 16, 2016 RFC"), (AR 22). The ALJ analyzed each RFC in individual sections, which discussed the medical opinions upon which that specific RFC was based. (*Compare* AR 19–22 *with* AR 22–25.)

"The Commissioner's regulations require the ALJ to consider all medical opinions in the record" and "discuss the weight she assigns to such opinions." *Quintero v. Colvin*, 567 F. App'x

---

[7] Mr. Barber contends that the ALJ made additional errors warranting reversal. (*See* Doc. 19 at 15–16, 17–23.) The Court will not address these remaining claims because they may be affected on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

616, 619 (10th Cir. 2014). When an ALJ assigns an RFC that contradicts a medical source opinion, the ALJ must explain why the medical opinion was rejected. *See Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) (unpublished) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence."). If the ALJ fails to adequately explain the rejection, the Court must remand the case for the ALJ to do so. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007); *Givens*, 251 F. App'x at 568. Here, the ALJ considered and partially accepted the medical opinions of Mr. Barber's treating physician Dr. Carletta Thompson when determining Mr. Barber's post-January 16, 2016 RFC, but not when determining Mr. Barber's pre-January 16, 2016 RFC.

### A. Dr. Thompson's medical source opinions

The record contains three medical source opinions from Dr. Thompson, dated December 16, 2014, June 27, 2018, and December 2, 2019, respectively.[8]

On December 16, 2014, Dr. Thompson completed a medical assessment based on Mr. Barber's "medical history and the chronicity of findings as from 2011 <u>to current examination</u>."

---

[8] The Court notes that because Mr. Barber filed his disability claims on May 10, 2016, the pre-March 27, 2017 evidentiary framework governs this case. *See* 20 C.F.R. §§ 404.1527, 416.927. Thus, the ALJ is required to apply the "treating physician rule" when considering Dr. Thompson's medical opinions. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Under the treating physician rule, the ALJ is required to perform a sequential two-step inquiry. *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must first consider "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" *Watkins*, 350 F.3d at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *2). "If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record." *Id.* If the opinion is both well-supported and consistent, then the opinion must be given controlling weight. *Id.* Second, "even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *Watkins*, 350 F.3d at 1301) (cleaned up). Although an ALJ is not required to discuss each of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), if an ALJ rejects a treating source opinion as inconsistent with the record as a whole, he or she must explain or identify the claimed inconsistencies with sufficient specificity to allow for meaningful review, *Langley*, 373 F.3d at 1123.

(AR 1162 (emphasis in original).) Dr. Thompson opined that because of Mr. Barber's "[degenerative joint disease] of spine with back pain/spasms," he was limited to occasionally lifting and/or carrying less than 10 pounds and frequently less than five pounds; standing and/or walking less than 2 hours in an 8-hour workday and sitting less than 6 hours; occasionally kneeling and stooping but never crouching or crawling; and limited in reaching in all directions. (*Id.*) Dr. Thompson also opined that Mr. Barber's non-physical work activities would be affected by his symptoms. (*Id.*) Despite Dr. Thompson's 2014 medical opinion expressly pertaining to the time period between 2011 and 2014, the ALJ only considered it when determining Mr. Barber's post-January 16, 2016 RFC. (*See* AR 25–26.) It appears that the ALJ misread Dr. Thompson's hand-written date on this opinion, and understood it as "the December 16, 2019 opinion of Dr. Thompson." (AR 25; *see* AR 37, 589, 1160, 1161 (specifying that Dr. Thompson's medical opinion is dated 12/16/14).)

On June 27, 2018, Dr. Thompson completed a second medical assessment based on Mr. Barber's "medical history and the chronicity of findings as **from 2014 to current examination**." (AR 840 (emphasis in original).) This medical opinion is essentially the same as Dr. Thompson's 2014 opinion, except that Dr. Thompson opined that Mr. Barber was limited to sitting less than 4 hours in an 8-hour workday, occasionally pushing and pulling, and that he could never kneel or stoop. (*Id.*) The opinion included a separate a non-physical assessment in which Dr. Thompson opined that Mr. Barber's pain was severe and disturbed his sleep, and that he was required to "rest or lie down at regular intervals." (AR 841.) Dr. Thompson further opined that Mr. Barber had moderate limitations in his ability to "[m]aintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently" and "[c]omplete a normal workday and

workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods." (AR 841.)

On December 2, 2019, Dr. Thompson completed a third medical assessment based on Mr. Barber's "medical history and the chronicity of findings as from **08/07/2014 to current examination**." (AR 1143 (emphasis in original).) Dr. Thompson's 2019 opinion was essentially the same as the 2018 assessment, except Dr. Thompson opined that Mr. Barber could occasionally lift and/or carry 5 pounds, must alternate between sitting and standing to relieve pain or discomfort, and could less than occasionally reach overhead. (*Id.*) In the non-physical assessment, Dr. Thompson essentially found the same limitations as in her 2018 opinion and provided additional explanation that "Mr. Barber suffers chronic pain due to shoulder injury and back degenerative disease. He has decreased range of motion [with] limited tolerance for activity and constant pain. He has fatigue and impaired sleep. He has [upper extremity] and [lower extremity] weakness." (AR 1144.)

## B.   The ALJ's consideration of Dr. Thompson's medical opinions

In assessing Mr. Barber's post-January 16, 2016 RFC, the ALJ assigned "partial weight" to Dr. Thompson's three medical opinions, explaining that:

> Dr. Thompson's findings are consistent with the evidence of the record that found the claimant has few tender paraspinals and positive sitting straight leg raise test, which are positive in the back legs. This shows that the claimant would be in need of limitations. However, Dr. Thompson is ultimately inconsistent with findings that show that the claimant's abilities are improving with physical therapy and that physical therapy was helping the claimant to a point. Thus, I assign Dr. Thompson partial weight.

> I give partial weight to Dr. Thompson's opinion on December 2, 2019. Dr. Thompson had mostly the same limitations as she did in her original opinion except for that the claimant can occasionally lift five pounds and must alternate between

sitting and standing and the claimant can occasionally kneel, stoop, crouch and crawl.[9]

I give partial weight to the December 16, 2019[10] opinion of Dr. Thompson. Dr. Thompson's opinion was essentially analogous to his [sic] December 2, 2019, opinion but in this opinion, he [sic] found that the claimant can never crouch or crawl and can sit for less six hours out of an eight workday.

(AR 25–26 (citations omitted).)

In Mr. Barber's post-January 16, 2016 RFC, the ALJ found that Mr. Barber "has the [RFC] to perform sedentary work" and "can occasionally push and pull at the sedentary exertional level with the left non-dominant upper extremity." (AR 22.) These limitations are consistent with Dr. Thompson's medical opinion that Mr. Barber could occasionally lift less than 10 pounds. *See* 20 C.F.R. § 404.1567(a) (sedentary work "involves lifting no more than 10 pounds"). This is compared to the pre-January 16, 2016 RFC, in which the ALJ found that Mr. Barber "had the [RFC] to perform light work" and "could occasionally push and pull at the light exertional level with the left nondominant upper extremity." *See* 20 C.F.R. § 404.1567(b) (light work "involves lifting no more than 20 pounds at a time").

In short, it is clear that the ALJ effectively rejected Dr. Thompson's medical opinions as they pertained to Mr. Barber's pre-January 16, 2016 RFC. However, the ALJ did not provide any explanation for this rejection and did not discuss Dr. Thompson's opinions at all in the section

---

[9] The ALJ's finding that Dr. Thompson's 2019 opinion stated that Mr. Barber "can occasionally kneel, stoop, crouch and crawl," (AR 25), is incorrect. The Postural Limitation section of form used by Dr. Thompson provided "< Occ," "Occ.," "Freq.," and "Constant" as the only options, and Dr. Thompson selected "< Occ" as to Mr. Barber's ability to kneel, stoop, crouch and crawl. (AR 1143.) This is consistent with Dr. Thompson's 2018 opinion that Mr. Barber could never kneel, stoop, crouch or crawl. (AR 840.) However, the ALJ found in Mr. Barber's post-January 16, 2016 RFC that Mr. Barber "can occasionally . . . stoop, crouch, kneel, [and] crawl." (AR 22.)

[10] As discussed above, the ALJ misread the date on Dr. Thompson's December 16, 2014 medical opinion as December 16, 2019.

related to Mr. Barber's pre-January 16, 2016 RFC. (*See* AR 19–22.) Therefore, remand is warranted.[11] *See Clifton*, 79 F.3d at 1009–10; *Frantz*, 509 F.3d at 1302–03.

The Commissioner argues that Dr. Thompson's opinions "address functional limitations at the time they were issued," and therefore, the ALJ properly only considered the opinions as to Mr. Barber's RFC after January 16, 2016. (Doc. 25 at 8–9.) But, like the ALJ, the Commissioner misdates Dr. Thompson's 2014 medical opinion. (*See id.* at 8-9 ("[Dr. Thompson's] other two opinions are dated in 2019, and the ALJ similarly considered them after January 16, 2016.") Thus, she provides no argument that justifies the ALJ's failure to consider it.

As to the remaining opinions, the Commissioner argues that under *Lane v. Berryhill*, No. 17-cv-1181, 2019 WL 355279 (D.N.M. Jan. 29, 2019), an instruction that a physician is to "consider the patient's medical history and the chronicity of findings as from [date] to current exam" does not mean that the medical opinion will cover the entire time period. (Doc. 25 at 9.) Instead, the Commissioner contends that the medical opinions "reflect[] [Dr. Thompson's] assessment as of the date each opinion was given."[12] (*Id.*) But the form Dr. Thompson used in 2019 is different from the form used in *Lane*. Although both include the "medical history and the chronicity of findings" language, Dr. Thompson's 2019 medical assessment form includes

---

[11] Because the ALJ will be considering Dr. Thompson's medical opinions as to Mr. Barber's pre-January 16, 2016 RFC on remand, the Court notes that the ALJ failed to include as limitations or explain the rejection of Dr. Thompson's opinion that Mr. Barber had moderate limitations in his ability to complete a normal workday and workweek without interruptions due to pain or fatigue. (AR 841, 1144); *see Haga*, 482 F.3d at 1208 ("[A] moderate impairment is not the same as no impairment at all").

[12] The Commissioner asserts that "[i]t logically follows that these differing limitations reflected her assessment as of the date each opinion was given, rather than an assessment intended to cover multiple years (and overlapping years at that)." (Doc. 25 at 9.) That Dr. Thompson used different forms in 2018 and 2019 with minor differences in the options provided does not mean that her opinions are inconsistent. (*Compare* AR 840 *with* AR 1143.) Indeed, the ALJ concluded that Dr. Thompson's 2019 opinion "had mostly the same limitations" as her 2018 opinion. (AR 25.) And moreover, the ALJ found that Dr. Thompson's 2014 medical opinion "was essentially analogous to [her] December 2, 2019, opinion." (*Id.*)

additional instructions stating that "[i]f your patient's limitations were not present on these dates, please explain in detail in comment section." (AR 1143.) These additional instructions make clear that the medical opinions recorded on the 2019 form are intended to cover the entire time period, unless otherwise specified.

Then, at issue in *Lane* was whether substantial evidence supported the ALJ's findings that the physicians had not indicated the date the claimant's limitations began. *Lane*, 2019 WL 355279, at *5-*6. However, in assessing Mr. Barber's pre-January 16, 2016 RFC, the ALJ made no such findings and instead failed to discuss Dr. Thompson's opinions at all.[13] Thus, *Lane* is inapplicable; and, the Commissioner's argument that the ALJ properly discounted Dr. Thompson's opinions because they "reflect[] her assessment as of the date each opinion was given" is an improper post-hoc rationalization. *See Haga*, 482 F.3d at 1207–08 (courts "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself"); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (ALJ's decision must be evaluated "on the reasons stated in the decision"); *see also Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

## IV.  CONCLUSION

For the reasons above, the Court determines that the ALJ failed to properly consider all relevant evidence when assessing Mr. Barber's RFC for the dates between Mr. Barber's alleged onset date and the date on which the ALJ found Mr. Barber became disabled. Mr. Barber's Motion

---

[13] Further, in assessing Mr. Barber's post-January 16, 2016 RFC, the ALJ did not discuss whether Dr. Thompson indicated the date(s) on which the limitations to which she opined began. (AR 25-26.)

to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 19) is GRANTED. This matter is remanded to the Commissioner for further proceedings, consistent with this Memorandum Opinion and Order, to reconsider the ALJ's finding that Mr. Barber was not disabled on the dates between August 7, 2014, and January 16, 2016.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE